UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| BOBBI JO LANAM, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil No. 1:14-CV-391 JD ) |
| CAROLYN W. COLVIN, ACTING COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) ) ) ) |
| Defendant. | ) ) |

## **OPINION AND ORDER**

Plaintiff Bobbi Jo Lanam ("Lanam") applied for Disability Insurance Benefits and Supplemental Security Income disability benefits in 2011. The application was denied initially and upon reconsideration. Lanam then filed a complaint in this Court, seeking review of the final decision of the Defendant Commissioner of Social Security ("Commissioner"). [DE 1]. On June 16, 2015, Lanam filed her brief in support of her request to reverse the decision of the Commissioner, [DE 22], to which the Commissioner responded on September 22, 2015. [DE 28]. Lanam filed a reply on October 7, 2015. [DE 29]. The matter is now ripe for ruling, and jurisdiction is established pursuant to 42 U.S.C. § 405(g). For the following reasons the Court REMANDS this matter to the Commissioner for further proceedings.

### **I.    FACTUAL BACKGROUND**

Lanam filed her application for benefits, in this case, on February 9, 2011, alleging an onset date of October 15, 2008,[1] for limitations caused by mental and physical impairments. On June 6, 2013, the Administrative Law Judge Jeffrey P. La Vicka ("ALJ") held a video hearing.

---

[1] Lanam had been denied disability benefits in a prior decision on March 15, 2010. Accordingly, the ALJ administratively changed the alleged onset date to March 16, 2010, the day after the previous denial of disability.

1

Lanam, represented by counsel, gave testimony. The ALJ also heard testimony from Larry Ostrowski, an impartial vocational expert ("VE").

In the written opinion that followed, the ALJ determined Lanam last met the insured status requirements of the Social Security Act through June 30, 2013. Lanam had not engaged in substantial gainful activity since March 16, 2010. Furthermore, the ALJ determined Lanam suffered severe impairments in the form of morbid obesity, scoliosis, generalized osteoarthritis associated with lumbar facet arthropathy, lumbar anterolisthesis, chronic pain and strains, hypertension, hypothyroidism, affective/depressive disorder, borderline intellectual functioning, and anxiety disorder. The ALJ further found Lanam suffered from the following non-severe impairments: migrainous headaches, skin disorders including psoriasis, dermatitis, cellulitis, and eczema, calcaneal spurs, right foot tendinitis, mild obstructive sleep apnea, status post cholecystostomy, wrist pain, seasonal allergies, and gastrointestinal esophageal reflux disease. The ALJ then opined that Lanam did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, Appendix 1 ("Listings"). Ultimately the ALJ found Lanam had the residual functional capacity ("RFC")[2] to perform sedentary work. Additionally, the ALJ gave further limitations including the requirement for a sit/stand option that allows for Lanam to alternate sitting and standing positions for up to two minutes, at thirty minute intervals throughout the day without going off task. The ALJ also gave the following limitations: no foot control operation bilaterally; no more than occasional postural movements except no climbing of ladders, ropes, or scaffolds and kneeling, crouching, and crawling; requirement of a handheld assistive device only for uneven terrain or prolonged ambulation and the contralateral upper extremity can be used to lift and

---

[2] Residual Functioning Capacity is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. § 404.1545.

carry up to exertional limits; avoidance of concentrated exposure to extreme cold and heat, wetness and humidity, and excessive vibration; avoidance of all exposure to unprotected heights, hazardous machinery, and commercial driving; work limited to simple, routine, and repetitive tasks requiring only simple decisions with no fast paced production requirements, few work place changes, and no arithmetic or reading beyond the fourth grade level; no interaction with the public, and only occasional interaction with co-workers or supervisors.

After determining Lanam's RFC, the ALJ opined Lanam was unable to perform past relevant work as a home attendant. The ALJ then presented hypothetical questions to the VE who testified Lanam's RFC allowed her to work in other jobs that existed in significant numbers in the national economy as a document preparer, a table worker, and an ampule sealer. As a result, the ALJ ruled that Lanam was not disabled. The Appeals Council denied review of the ALJ's decision, making the decision the final determination of the Commissioner. 20 C.F.R. § 404.981; *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013).

## II. STANDARD OF REVIEW

In reviewing the decision, the Court will affirm the Commissioner's findings of fact and denial of disability benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Thus, even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

3

In this substantial-evidence determination, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection, and may not ignore an entire line of evidence that is contrary to his findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). Rather, an ALJ must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Id*. Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez*, 336 F.3d at 539. Ultimately, while the ALJ is not required to address every piece of evidence or testimony presented, the ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009). Furthermore, conclusions of law are not entitled to deference; so, if the Commissioner commits an error of law, reversal is required without regard to the volume of evidence in support of the factual findings. *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997).

### III. ANALYSIS

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security regulations create a five-step sequential

evaluation process to be used in determining whether the claimant has established a disability. 20 C.F.R. § 404.1520(a)(4)(i)-(v). The steps are used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;

2. Whether the claimant has a medically severe impairment;

3. Whether the claimant's impairment meets or equals one listed in the regulations;

4. Whether the claimant can still perform relevant past work; and

5. Whether the claimant can perform other work in the community.

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

If the claimant is performing substantial gainful activity or does not have a severe medically determinable impairment, or a combination of impairments that is severe and meets the duration requirement, then the claimant will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i)–(ii). At step three, if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations, disability is acknowledged by the Commissioner. 20 C.F.R. § 404.1520(a)(4)(iii). In the alternative, if a Listing is not met or equaled in between steps three and four, the ALJ must assess the claimant's RFC, which is used to determine whether the claimant can perform her past work under step four and whether the claimant can perform other work in society at step five of the analysis. 20 C.F.R. § 404.1520(e). The claimant has the initial burden of proof in steps one through four, while the burden shifts to the Commissioner in step five to show that there are a significant number of jobs in the national economy that the claimant is capable of performing. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

Lanam challenges the ALJ's decision for four different reasons. First, Lanam argues the ALJ erred in his analysis of Lanam's treating physician. Second, the ALJ failed to adequately

account for Lanam's obesity in the RFC determination. Third, the ALJ's credibility determination of Lanam was flawed. Fourth, the ALJ erred in failing to find Lanam met one of the Listings. For the following reasons this case is REMANDED for further proceedings consistent with this opinion.

**A. Treating Source Rule**

Lanam argues the opinion of her treating psychiatrist, Dr. Kaza, should have been given controlling weight by the ALJ, and that the ALJ improperly weighed the evidence. [DE 22 p. 17-20]. Specifically, Lanam argues the state consultative psychological examiner, Brown,[3] corroborates Dr. Kaza's findings. [*Id.*] Lanam further argues the ALJ misplaced reliance on her alleged improvement in 2010. [DE 29 p. 4-5]. This Court agrees.

Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. *See Giles v. Astrue*, 433 Fed.Appx. 241, 246 (5th Cir. 2011). The opinion of the first type, a "treating physician," is ordinarily afforded special deference in disability proceedings. The regulations governing social security proceedings instruct claimants to that effect:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic

---

[3] Lanam refers to the state consultative examiner as Caldea Johnson Brown. The ALJ and Commissioner refer to the state consultative examiner as Claudia Johnson Brown. For the purposes of this opinion, this Court will refer to the state consultative examiner as Brown.

techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2).

The treating physician's opinion is *not* entitled to controlling weight, however, where it is not supported by the objective medical evidence, where it is inconsistent with other substantial evidence in the record, or where it is internally inconsistent. *See Clifford v. Apfel*, 227 F.3d 863, 871 (7th Cir. 2000) (citing *Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995)). Ultimately, an ALJ's decision to give lesser weight to a treating physician's opinion is afforded great deference so long as the ALJ minimally articulates his reasons for doing so. *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008). The Seventh Circuit has deemed this very deferential standard to be "lax." *Id.* Nevertheless, the ALJ must offer "good reasons" for discounting a treating physician's opinion. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011).

If the ALJ decides the treating physician's opinion should not be given controlling weight, the ALJ is "required by regulation to consider certain factors in order to decide how much weight to give the opinion[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). These factors are set forth in 20 C.F.R. § 404.1527(c)(1)-(5) and include: 1) the "length of the treatment relationship and the frequency of examination," 2) the "[n]ature and extent of the treatment relationship"; 3) "[s]upportability"; 4) consistency "with the record as a whole"; and 5) whether the treating physician was a specialist in the relevant area.

In the case at hand the ALJ discusses all the evidence in the record, mental and physical, before providing any analysis of Dr. Kaza's opinion. The ALJ concludes at the end of his review that the "above-discussed objective evidence reveal[s] no more than moderate mental limitations[.]" (R. 32). The ALJ then weighs Dr. Kaza's opinion writing:

7

"Moreover, little weight is given to Dr. Kaza's assessment of functional limitations, which are inconsistent with the above-discussed objective evidence. Dr. Kaza stated that the claimant could not work in May 2011, and he found the claimant had marked mental limitations. However, this evidence is inconsistent with the above-discussed objective evidence and the "paragraph B" criteria findings, which prove the claimant has no more than moderate mental limitations. Further, with reference to disability determinations as to whether an individual is disabled are administrative findings, reserved to the Commissioner (SSR 96-5p). (Exhibits B5F, B13F, and B20F)."

(R. 33).

As a preliminary matter, this Court would note the ALJ's opinion as to Dr. Zara's findings is void of any analysis. Instead the ALJ relies on "above-discussed" evidence. In doing so, the ALJ has put this Court in the position of providing a treating physician analysis. This is not the Court's role in a substantial-evidence determination. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). An ALJ must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). To the extent the ALJ's prior discussion of the evidence is sufficient to allow an informed review, this Court will proceed on its own interpretation of the ALJ's evidence. As such, this Court believes the ALJ to be discounting the opinion of Dr. Zara because of Lanam's alleged improvement in her mental condition in 2010, the lack of objective findings made by Dr. Zara, and the ALJ's rejection of Global Assessment Functioning ("GAF") scores as a tool of interpretation.

Dr. Zara has been Lanam's treating psychiatrist since 2009. At Lanam's initial consultation with Dr. Zara, she admitted to being depressed, feeling hopeless and helpless, and hearing voices. (R. 365). Dr. Zara started Lanam on Effexor XR for treatment of her symptoms, and opined Lanam had a GAF score of 50. (R. 367-368). After Lanam's initial appointment, it appears she continued under the care of Dr. Zara as well as a counselor or nurse. In May of 2010, Lanam had an appointment with Barbara Marsch who seems to be involved with Lanam's mental

8

healthcare.[4] (R. 369-379). At this appointment Lanam reported she was irritable, in a depressed mood, crying and suffering from decreased concentration. (*Id.*) Marsch further noted Lanam's previous suicidal ideation, however, Lanam denied suicidal ideation presently. (*Id.*) Marsch reexamined Lanam in July of 2011, and noted Lanam continued to experience periods of depression due to lifestyle changes and stressors, but that she was able to maintain supports to keep out of hospital admissions. (R. 587).

In July of 2010 Lanam revisited Dr. Kaza. (R. 382-383). Together Dr. Kaza and Lanam set goals. (*Id.*) The first goal was to improve mood and behaviors with a target completion date of one year. (*Id.*) To accomplish this goal, the first objective was to improve coping skills. (*Id.*) Dr. Kaza sought to decrease by 75% the frequency, intensity, duration of depressed episodes. (*Id.*) Additionally, the second objective was to improve daily function by decreasing daily suicidal ideations. (*Id.*) Both of these objectives had a duration period of one year. (*Id.*) Then, as the ALJ notes, there is a gap in treatment records. On October 13, 2012 there is a record concerning medication management by Dr. Kaza. (R. 658). The next record available has a date of November 4, 2011. (R. 569-571). As the ALJ notes, it appears Lanam continued under the care of Dr. Kaza through this period. (R. 29). On November 4, 2011 Dr. Kaza saw Lanam and completed a Mental Status Questionnaire and Daily Activities Questionnaire. (R. 569-573). Regarding the Mental Status Questionnaire, Dr. Kaza opined Lanam's appearance was fair to poor, the flow of conversation was fair, and Lanam was oriented to time, place, and person. (R.569-571). Dr. Kaza opined all other areas including Lanam's ability to remember, understand and follow directions, maintain attention, sustain concentration, social interaction, and adaptation

---

[4] The Commissioner refers to Marsch as a nurse. [DE 28-1 p. 2]. The ALJ does not directly refer to Marsch, but rather the mental health findings from Marsch as it relates to Dr. Kaza. (R. 28). Lanam does not refer to Marsch but rather asserts Lanam continued under the care of Dr. Zara from 2009 to 2013. [DE 22 p. 5-6].

were "poor." (*Id.*) Dr. Kaza opined Lanam suffered from Major Depressive Disorder with psychotic features. (*Id.*) Regarding the Daily Activities Questionnaire, Dr. Kaza opined that while Lanam lived with her mother she cannot get along with others. (R. 572). Additionally, Dr. Kaza opined Lanam did not get along well with former employers, supervisors, and co-workers, and suffers poor stress tolerance. (*Id.*) Dr. Kaza further noted Lanam's mother performed all activities of daily living except Lanam's own personal hygiene. (R. 573). Finally, in 2013, Dr. Kaza completed a Functional Assessment. (R. 669-670). In the assessment, Dr. Kaza found Lanam had marked limitations in the following: ability to accept instruction from or respond appropriately to criticism from supervisors or superiors, ability to work in coordination with or in proximity to others without distracting them or exhibiting behavioral extremes, ability to perform and complete work tasks at a consistent pace, ability to maintain attention and concentration, ability to tolerate low stress work on sustained basis, and ability to tolerate high stress work on a sustained basis. (*Id.*)

It appears the ALJ misconstrued the medical records in concluding there was an improvement of Lanam's condition. In his discussion of the evidence, the ALJ cites to Dr. Kaza's July 2010 medical records claiming "[Lanam] was assessed to have improved coping skills evidence[d] by a decrease in frequency, intensity and duration of depressed episodes. Consistently her mood and behaviors were improved overall." (R. 28-29). This is not what the record stated. Lanam was not assessed to have improved coping skills, but rather set a goal to improve coping skills. (R. 382-383). The July 2010 medical record is comprised of year-long goals and objectives for Lanam, not actual improvements. Accordingly, the ALJ reliance on the improvement of Lanam's condition is misplaced.

The second reason the ALJ dismisses the findings of Dr. Kaza is because they were not supported by "objective findings." Yet the ALJ rejected all of Lanam's GAF scores, a classification system providing objective evidence of a degree of mental impairment. *See, Schmidt v. Callahan,* 995 F. Supp. 869, 886, n. 13 (N.D.Ill.1998).[5] The ALJ impermissibly played doctor when he discredited all GAF scores writing,

> "[GAF] scores are essentially based on the claimant's subjective complaints and other statements at that particular point in time. This body of often uncorroborated subjective statements is then subjectively processed through the evaluator's own individual mindset and interpretations regarding mental impairments, symptoms, severity and other facts. The undersigned believes that such a process can well lead to inaccuracies and inconsistencies."

(R. 34).

While the GAF metric has been recently discontinued, it does not change the fact that it was in use at the time of Lanam's treatment, and serves as a measure of Lanam's symptoms. What is more, the ALJ summarily dismisses all GAF scores without any cite to any observations or descriptions from treating providers to contradict the assigned GAF scores. In fact, the ALJ overlooks the fact that both Dr. Kaza and the state psychological consult, Brown, assign low GAF scores between 35 and 40[6] to Lanam. (R. 530, 670). Remand is therefore necessary for the ALJ to address this piece of evidence appropriately.

To the extent the ALJ finds the medical records of Dr. Kaza insufficient, this Court would further direct the ALJ to Social Security Ruling 96-2p, admonishing the ALJ that "in some instances, additional development required by a case – for example, to obtain more

---

[5] The GAF score is a numeric scale of 0 through 100 used to assess severity of symptoms and functional level. *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 32 (4th ed. text revision 2000). Although the American Psychiatric Association recently discontinued use of the GAF metric, it was still in use during the period Lanam's examinations occurred. *See id.* 16 (5th ed. 2013).
[6] A GAF score of 35-40 corresponds to "[s]ome impairment in reality testing or communication (e.g. speech is at times illogical, obscure or irrelevant) *or* major impairment in several areas, such as work or school, family relations, judgment, thinking or mood (e.g. depressed adult voids friends, neglects family, and is unable to work[.])" *Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders 32* (4th ed. text revision 2000).

evidence or to clarify reported clinical signs or laboratory findings – may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the record." This Court submits this is such a case. While the medical records authored by Dr. Kaza are not particularly voluminous, Dr. Kaza has been Lanam's sole treating psychiatrist for a number of years. As the ALJ himself noted, it appears Dr. Kaza has continued to treat Lanam from 2009 through the 2013 functional assessments. (R. 29). Yet, there are no records of any treatment. The ALJ has an opportunity to develop Dr. Kaza's opinion with additional evidence. To the extent any additional evidence corroborates or detracts from Dr. Kaza's findings is a matter left to the ALJ on remand. This Court would additionally note the ALJ has this same opportunity with the state psychological consult, Brown. The ALJ has discredited Brown's opinion, which is largely consistent with Dr. Kaza's. The ALJ cites that Brown's report was internally inconsistent because Brown noted Lanam's recent memory was both moderately impaired and markedly impaired. On remand the ALJ will have an opportunity to explore the reason for that inconsistency. The ALJ appears to be impermissibly "cherry picking" which part of Brown's opinion to rely on. *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) where the ALJ highlights Lanam's speech and orientation, but disregards Brown's findings as to Lanam's concentration and ability to understand, remember, and carry out instructions.

Even if the ALJ's assignment of "little weight" to the opinion of Dr. Kaza was proper, the ALJ's opinion would still require remand. The ALJ failed to discuss or show he was guided by the factors in 20 C.F.R. § 404.1527(c)(1)-(5) as "required by regulation[.]" *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). While the ALJ minimally wrote about the consistency of Dr.

Kaza's opinion with the record, the ALJ failed to explain or show he considered the remaining factors. There existed ample evidence in the record about the length of treatment relationship and frequency of the examination; nature and extent of the treatment relationship; supportability; and whether the treating physician was a specialist in the relevant area. On remand the ALJ should address these factors in determining what weight to provide the opinions of treating physicians.

    **B. Treatment of Obesity**

Lanam further argues the ALJ erred in his analysis of her obesity. Specifically, Lanam contends the ALJ's analysis of her obesity was too cursory to permit a meaningful review. [DE 22 p. 20-21]. This Court agrees. Remand is necessary for the ALJ to consider, with greater explanation, how Lanam's morbid obesity impacts her RFC.

SSR 02–1p requires an ALJ to assess the "effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Individuals with obesity may have problems with the ability to sustain a function over time." In determining a claimant's RFC, the ALJ must consider any limitation in function caused by obesity. The Social Security Administration recognizes that obesity may limit the person's exertional abilities (e.g., sitting, standing, walking, lifting, carrying, pushing, and pulling), ability to perform postural functions (e.g., climbing, balancing, stooping, and crouching), and ability to work on a regular and continuing basis. SSR 02-1p at 6. "The combined effects of obesity with other impairments may be greater than might be expected without obesity. For example, someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from the arthritis alone." SSR 02–1p at 6; *see Barrett v. Barnhart,* 355 F.3d 1065, 1068 (7th Cir. 2004) ("Even if Barrett's arthritis was not particularly serious in itself, it would interact with her obesity to make standing for two hours at a time more

13

painful than it would be for a person who was either as obese as she or as arthritic as she but not both."); *see also Gentle v. Barnhart,* 430 F.3d 865, 868 (7th Cir. 2005) (noting potential effect of obesity on ability of person with disc disease to sit and stand); *Stage v. Colvin*, No. 15—1837, 2016 WL 492333 (7th Cir. Feb. 9, 2016) (finding error where the ALJ failed to account for the exacerbating effect of claimant's obesity on her ability to stand when claimant had to sit while showering and shopping).

In the instant case, Lanam reported she was 5'9" in height and weighed 592 pounds at the time of the ALJ hearing on June 6, 2013. (R. 67). In February 2011, Lanam reported being 5'9" and weighing 458 pounds. (R. 302). Lanam stated she gained about 200 pounds in the past two years. (R. 68). Lanam reported being able to leave the house, which required the use of three stairs, about three times a week. (R. 68-69). When asked how her obesity impacted her ability to work, Lanam stated she could not stand for a long period of time, and could only walk about twelve feet before having to sit down. (R. 76). However, Lanam stated she could sit "fine" with the assistance of a cushion. (R. 75-76). She also reported suffering shortness of breath when she has to walk. (R. 84). The ALJ found Lanam suffered a severe impairment in the form of chronic pains and strains, which is also likely to be exacerbated by Lanam's obesity. (R. 23, 32). With regard to medical records, Lanam suffers from back, (R. 409, 425-427, 534, 651-652), and knee pain, (R. 497, 500, 505, 654), which, given the ALJ's finding, are also likely exacerbated due to her morbid obesity. Still, as the Commissioner correctly points out, Brown noted Lanam walked with "no obvious gait disturbance." (R. 524). Likewise pain management specialist, Dr. Crawford Barnett, noted Lanam's gait was nonantalgic. (R. 536).

The ALJ considered Lanam's morbid obesity to be a severe impairment. (R. 23). With specific reference to Lanam's morbid obesity, the ALJ concluded:

> "The undersigned finds the claimant's body habitus to be such as may be reasonably anticipated to produce or contribute to symptoms of back or other musculoskeletal pain and some shortness of breath, and to generally limit mobility and stamina (Social Security Ruling 02-1p). Overall, in considering the claimant's body habitus, the undersigned has more than fully accommodated any functional limitations that the claimant may have in this regard by restricting the claimant's work activity as set forth in the above-describe sedentary residual functional capacity."

(R. 32).

This Court would note, again, this conclusion by the ALJ is not an analysis, and remind the ALJ that he must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). Consequently, an ALJ's decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court recognizes there is not much evidence in the record, medical or testimonial, that addresses the severity of Lanam's obesity on her ability to function. Yet, it is unavoidable that Lanam's weight between 500 and 592 pounds does have a serious impact on her ability to function. When asked by the ALJ what condition Lanam feels most interferes with her ability to work, Lanam stated it was her inability to stand or sit for a long period of time. (R. 75). Accordingly, Lanam identified her most severe impairment to be directly related to her obesity. She further testified her weight "takes a lot [e]ffect on me because I can't stand for a long period of time. I can't actually walk. It takes my breath away." (R. 84). This Court realizes Lanam stated she could sit "fine," (R. 75-76), and that the ALJ restricted Lanam to sedentary work. While this RFC would appear, facially, to accommodate Lanam, this Court recognizes that Lanam's weight of 500-592 pounds will likely have a greater impact on Lanam's persistence, pace, and functionality. This Court would also note Lanam's obesity limited the radiological and physical examinations exploring her back and knee pain. (R. 443, 505, 533, 535, 536). In her

15

Function Report, Lanam stated she needs to sit in a chair to take a shower, she cannot wash herself because she cannot reach all the areas of her body, and that she sometimes needs help getting off the toilet because she is unable to do so alone. (R. 334). In *Stage v. Colvin*, the Seventh Circuit found it "strain[ed] credulity to find that a claimant who needed a hip replacement and had to sit while showering and shopping for groceries was capable of standing for six hours a day in a workplace." 2016 WL 492333, at *5. This Court questions how someone with such limitations, as to not even be able to perform the most intimate of daily activities, is capable of being in the workplace. Neither the ALJ nor Lanam's attorney explored this issue in depth. On remand the ALJ will need to address the degree to which Lanam is capable of performing sedentary work[7] given her morbid obesity.

### C. Credibility

As to the issue of credibility, Lanam initially asserted she was entitled to a greater credibility because of her work history. [DE 22 p. 23-24]. As the Commissioner correctly pointed out, a claimant "is not entitled to a presumption of credibility based solely on his long work history." *Jones v. Apfel*, 234 F.3d 1273 (7th Cir. 2000). Lanam then replied arguing the ALJ's reliance on her activities of daily living is contrary to the opinion of Dr. Kaza. [DE 29 p. 6].

The ALJ finds Lanam's statements concerning the intensity, persistence, and limiting effects of her symptoms not entirely credible "for the reasons explained in this decision." (R. 27).

---

[7] This Court would further note that all of the sedentary positions the ALJ determined Lanam was capable of performing "may involve walking or standing for brief periods of time," as well as frequently require the ability to "lift, carry, push, pull, or otherwise move objects, including the human body." 1991 WL 672349 (G.P.O. 1991). Furthermore, all three positions require a minimum math capacity to add and subtract two digit numbers. 1991 WL 672349 (G.P.O. 1991). On remand the ALJ should consider whether Lanam's morbid obesity prohibits her from performing even sedentary work. Additionally, the ALJ should address whether Lanam is capable of meeting the basic mathematics requirements, where Brown found Lanam was unable to add two digit numbers in her consultative examination. (R. 526).

16

This Court would again note this is not an analysis. The ALJ does provide several examples, noting Lanam is able to care for her personal needs unless her back is hurting, talks on the phone with others on a regular basis, has friends, lives with her mother, has a driver's license and drives, takes public transportation, and is able to count change. (R. 27-28). The ALJ says these activities are not the activities of someone who is totally disabled. (*Id*.) However, the ALJ fails to explain how talking on the phone, having friends, living with her mother, driving a car, taking public transportation, or needing help taking care of personal needs when her back hurts are inconsistent with Lanam statements surrounding her ability to move. Additionally, the ALJ seems to be asserting Lanam was inconsistent in her statement about being able to care for herself because she said she could do so when her back is not hurting. As the ALJ himself found, Lanam's obesity can reasonably be anticipated to produce or contribute to symptoms of Lanam's back pain. (R. 32). Given Lanam's continued state of obesity, this Court questions whether the ALJ's reliance on this sole statement is misplaced. Additionally, the ALJ cherry picked a part of Lanam's statement, which continues, "unless my back's hurting or my mom has to help me wash some of my body parts." (R. 77). As Lanam stated in her Function Report she can't reach all the areas of her body to clean herself. (R. 334). Accordingly, while Lanam may demonstrate some level of social interaction, the ALJ failed to explain how Lanam's social interaction relates to her statements about her ability to stand, walk, and perform physical tasks. On remand the ALJ will need to provide a proper analysis beyond the conclusory statement, "for the reasons explained in this decision." Additionally, consistent with this Court's discussion of Lanam's obesity, the ALJ will need to address how Lanam's statements concerning her physical capacity to perform tasks are not credible, and how, if at all, her social interaction discredits her statements about her physical abilities.

### D. Listing

Lanam also argues the ALJ erred by finding she did not meet Listing 12.05. [DE 22 p. 21-22]. Specifically, Lanam argues she met the verbal IQ score requirement in Listing 12.05(C), and that the ALJ erred in his analysis of adaptive functioning. [*Id.*]

There are four requirements for a finding of mental retardation under Listing 12.05(C): (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1 § 12.05; *Maggard v. Apfel,* 167 F.3d 376, 380 (7th Cir. 1999). "Adaptive functioning" refers to a person's ability to perform activities of daily living and social functioning. *Id*. In light of the various issues for remand, the Court suggests the ALJ reconsider Listing 12.05 to the extent that analysis may be impacted by these issues.

Lanam asks this Court for summary judgment in favor of her disability claim with an award of benefits. [DE 1]. In this context it is not the Court's role to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez*, 336 F.3d at 539. Accordingly, where issues of credibility and weight remain, remand is proper.

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Lanam's motion for summary judgment, but GRANTS Lanam's request to remand the ALJ's decision. [DE 1]. This case is **REMANDED** for further proceedings consistent with this opinion.

SO ORDERED.

ENTERED: March 17, 2016

                                                  /s/ JON E. DEGUILIO  
                                                  Judge  
                                                  United States District Court